UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ELIZABETH JOHNSON,<br><br>     Plaintiff,<br><br>  v.<br><br>THE BOEING COMPANY,<br><br>     Defendant. | Case No. C07-1614MJP<br><br>ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

   This matter comes before the Court on Defendant's motion for summary judgment. (Dkt. No. 11.) Plaintiff filed a response to the motion (Dkt. No. 20) and Defendant filed a reply (Dkt. No. 24). Oral argument was not requested. Having considered the parties' briefs and all documents submitted in support, the Court DENIES Defendant's motion for summary judgment.

## Background

   This is the first motion filed in this employment discrimination action — the second employment discrimination lawsuit filed by Plaintiff against Boeing since 2004. Because Defendant argues that the doctrine of res judicata bars this second action, the relevant background includes facts that were the basis of Plaintiff's first action. (Johnson v. Boeing ("Johnson I"), No. C04-2198 (W.D. Wash. 2004) (Lasnik, C.J.)) and those underlying her present claims (Johnson v. Boeing ("Johnson II"), No. C07-1614MJP (W.D. Wash. 2007)).

   Plaintiff was employed by Boeing from October 1996 through August 23, 2002, as a sealer on Boeing's production line. (Johnson II, Dkt. No. 18, Declaration of Elizabeth Johnson ("Johnson Decl.") ¶¶ 2, 3, and 5.) A collective bargaining agreement ("CBA") between Boeing

ORDER — 1

and the International Association of Machinists and Aerospace Workers, District Lodge No. 751, governed the terms and conditions of Plaintiff's employment. (Johnson II, Dkt. No. 12, Declaration of Andrew Greene ("Greene Decl."), Ex. G.) From September 1999 through May 2000, Boeing used acetylene torches to cut apart and disassemble old aircraft in the manufacturing facility. This occurred on the floor area immediately below Plaintiff's work area and was accompanied by a large amount of smoke. (Johnson II, Johnson Decl. ¶ 6.) During this time, Plaintiff began to experience a variety of respiratory problems, which she attributed to her exposure to the unventilated smoke in her work area during the torch-cutting project. (Id. ¶ 7.)

In October 1999, Plaintiff filed a Safety, Health, and Environmental Action Request ("SHEAR") with Boeing. (Johnson Decl. ¶ 8.) During the duration of the project and while the SHEAR was still ongoing, Plaintiff alleges that Boeing indicated it had addressed her concerns and requested that Plaintiff withdraw the SHEAR. Plaintiff persisted because she felt Boeing failed to adequately address the air quality problem. (Id. ¶ 8.) It is unclear from the record how Plaintiff's SHEAR was ultimately resolved, if at all. Once the torch-cutting project concluded in May 2000, Plaintiff claims her health problems continued. (Id. ¶ 10.) Although Plaintiff sought and received medical care for her respiratory complaints, she continued to work without medical restriction on her job as a sealer. (Id. ¶ 14.)

On August 23, 2002, Boeing laid off Plaintiff and thousands of other employees as part of a Reduction in Force ("RIF") also governed by the CBA. Nearly two years after the layoff, on June 28, 2004, Plaintiff filed Johnson I against Boeing in Snohomish County Superior Court. (Johnson I, Dkt. No. 3.) The complaint alleged an array of employment claims, including that (1) Boeing exposed Plaintiff to toxic substances during her employment; (2) Boeing subjected Plaintiff to continuous discrimination, harassment, and a hostile environment during her employment; and (3) Plaintiff's layoff was retaliatory, discriminatory and in breach of the CBA. (Johnson I, Dkt. No. 3, Complaint ("Compl.") ¶¶ 6, 9, and 10.) Boeing successfully removed the case to this Court, where it was heard by Chief Judge Lasnik. (Johnson I, Dkt. No. 1.)

ORDER — 2

1    On April 19, 2005, while <u>Johnson I</u> was ongoing, Johnson was recalled to her Boeing
2 sealer job.  The recall process is also governed by the CBA.  Johnson was required to take and
3 pass a pre-employment medical evaluation before returning to work.  (<u>Johnson II</u>, Dkt. No. 15,
4 Declaration of Dr. William Smith ("Smith Decl.") ¶ 3.)  Johnson reported a number of medical
5 conditions on her form, including respiratory problems and chemical sensitivity.  (Johnson Decl.,
6 Ex. 3.)  Boeing's Pre-employment Medical Department contacted Johnson on May 17, 2005 for
7 additional information on her noted restrictions and to evaluate what accommodations, if any,
8 would be needed to allow Johnson to return to her job as sealer.  (Smith Decl. ¶ 5.)  Boeing then
9 required Johnson to be evaluated by her treating physician, Dr. Gail English, and her pulmonary
10 specialist, Dr. Dorsett Smith, prior to returning her to work as a sealer.  (<u>Id.</u> ¶ 6.)  On July 13,
11 2005, Dr. Dorsett Smith diagnosed Johnson with mild asthma and opined that Johnson would
12 need to wear a respirator where fumes, dust, odors, or smoke are present, with no other
13 limitations.  (Johnson Decl., Ex. 4.)

14    Relying on this diagnosis, Dr. English recommended to Boeing that Johnson could not
15 perform work within 100 feet of chemicals or dust. (Johnson Decl. ¶ 26; Smith Decl. ¶ 6.)  On
16 August 1, 2005, Boeing's Pre-employment Medical Department informed Johnson that these
17 restrictions prevented her from working as a sealer.  (Smith Decl. ¶¶ 7 and 8.)  On August 23,
18 2005, Johnson informed Boeing that she believed Dr. Dorsett Smith opined that she could
19 perform her sealer job with the use of a respirator.  (Johnson Decl. ¶ 30.)  On October 15, 2005,
20 Boeing asked Dr. Dorsett Smith whether and under what conditions Johnson could work with a
21 number of chemicals used in Boeing's aircraft construction facility.  (Johnson Decl., Ex. 7.)  Dr.
22 Dorsett Smith opined that Johnson could not use a respirator and increased her restriction to no
23 exposure within 300 feet of any of the specified chemicals.  (<u>Id.</u>)  This effectively precluded
24 Johnson from returning to work as a sealer.  Boeing's subsequent attempt to find other work for
25 Johnson within the company was unsuccessful, and as of January 23, 2006, Johnson was placed
26 on "medical layoff."  (<u>Johnson II</u>, Dkt. No. 14, Declaration of Maria Venditto-Baez ¶¶ 4-6.)
27

ORDER — 3

A few months earlier, on October 24, 2005, two weeks before Boeing's summary judgment motion in Johnson I was ripe, Johnson's counsel withdrew. (Johnson I, Dkt. No. 18.) With Johnson proceeding pro se, the court continued the trial date and other events for several months. (Johnson I, Dkt. No. 20.) Plaintiff retained new counsel on April 11, 2006. New counsel (who is counsel of record in this case) filed a motion for a continuance based on the need to bring new claims arising from Plaintiff's recall and medical layoff. (Johnson I, Dkt. No. 37.) Defendant opposed the motion, but made no argument as to the Plaintiff's request to amend her complaint. (Johnson I, Dkt. No. 39.) The Court continued the trial date, but denied the motion to amend on timeliness grounds. (Johnson I, Dkt. No. 48.) On July 19, 2006, by stipulation of the parties, Johnson I was voluntarily dismissed with prejudice. (Dkt. No. 51.)

Around the time of the dismissal, Johnson sought out a third opinion from Dr. Jordon A. Firestone.[1] (Johnson Decl. ¶ 43.) Dr. Firestone apparently obtained and reviewed Johnson's chart notes and test results from Dr. Smith. Thereafter, Johnson received a letter from Dr. Firestone indicating that Dr. Smith had incorrectly diagnosed her with asthma. (Johnson Decl., Ex. 9.) On August 16, 2006, Dr. Firestone provided Johnson with a return to work note with no restrictions. (Johnson Decl., attached as Ex. 10.) Johnson then requested a reconsideration of Boeing's medical layoff. Rather than reassign Johnson to a sealer position, Boeing requested a new pulmonary function test. (Johnson Decl. ¶¶ 45, 46, 47, and 50.) On August 21, 2006, Johnson filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging that she should have been recalled on or about May 31, 2005, but was not due to discrimination on the basis of her age and disability, and that she was placed on medical layoff based on a perceived disability and her age. (Greene Decl., Ex. E.)

Several months later, on January 29, 2007, Johnson's pulmonary function test was

---

[1] Defendant argues that statements attributed to Dr. Firestone are inadmissible hearsay under Fed. R. Evid. 801(c) and should not be considered by the Court. (Mot. for Summ. J. at 5; Reply at 9.) Plaintiff does not attempt to rebut this argument, nor has Plaintiff provided the Court with an affidavit or declaration from Dr. Firestone. Because Dr. Firestone's alleged statements are irrelevant to the Court's analysis, Defendant's motion to strike these statements is moot.

ORDER — 4

performed by Providence Medical Center and subsequently reviewed by Dr. Dorsett Smith on January 29, 2007. (Johnson Decl. ¶ 52.) Dr. Dorsett Smith again concluded that Johnson suffered from mild asthma. Johnson contacted Providence to discuss Dr. Dorsett Smith's interpretation of the results, and was informed that the test was in fact normal. (Johnson Decl., Ex. 12.)

On July 16, 2007, the EEOC concluded that it did not find a violation of the statutes and issued a Right to Sue. (Greene Decl., Ex. F.) On September 28, 2007, Johnson submitted a second reconsideration request to Boeing, including the normal pulmonary function test and medical records from Dr. Firestone, requesting that they review her medical layoff status. (Johnson Decl. ¶ 57.) On October 9, 2007, Johnson filed this action, alleging three causes of action:

1. Age was a determinative factor in Boeing's failure to return Plaintiff to work and the medical layoff, in violation of the Age Discrimination in Employment Act ("ADEA");

2. Plaintiff's actual and/or perceived disability was a determinative factor in Boeing's failure to return Plaintiff to work and her medical layoff, and that Boeing's decision was retaliatory, in violation of the Americans with Disabilities Act ("ADA"); and

3. Boeing's conduct constitutes unlawful discrimination and retaliation under the Washington law against discrimination, RCW 49.40 et seq.

(Johnson II, Compl. ¶¶ 5.4, 6.6, 6.7, and 7.3.)

Defendant Boeing Company now moves for summary judgment on the single ground that, as a matter of law, all claims in Johnson II are barred by the doctrine of res judicata because they arose before the dismissal of Johnson I and involve the same operational facts.

**Discussion**

**I.   Legal Standard**

Summary judgment is appropriate where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000); see also Fed. R. Civ. P. 56(c).

ORDER — 5

## II. Res Judicata

The applicability of the doctrine of res judicata is a question of law. In re Schimmels, 127 F.3d 875, 880 (9th Cir. 1997). Following entry of a final judgment on the merits, the doctrine "precludes the parties or their privies from relitigating issues that were or could have been raised in [a prior] action." Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 322 F.3d 1064, 1078 (9th Cir. 2003). Deciding whether the doctrine applies involves a three-part inquiry: whether the earlier suit "(1) involved the same 'claim' or cause of action as the later suit, (2) reached a final judgment on the merits, and (3) involved identical parties or privies." Mpoyo v. Litton Electro-Optical Sys., 430 F.3d 985, 987 (9th Cir. 2005) (quoting Sidhu v. Flecto Co., 279 F.3d 896, 900 (9th Cir. 2002) (internal quotations omitted)).

Here, both parties concur that only the first element of the test is at issue. (Def.'s Mot. for Summ. J. at 8; Plf.'s Opp. at 13.) Element two is satisfied because Johnson I was dismissed with prejudice in July 2006, and is a final federal judgment. See United States v. Cunan, 156 F.3d 110, 114 (1st Cir. 1998) ("[A] voluntary dismissal with prejudice is ordinarily deemed a final judgment that satisfies the res judicata criterion."). Element three is met because the parties involved in the two actions, Johnson and Boeing, are identical. Thus, the question is whether the prior action involved the same "claim" as the present suit.

### A. Whether Johnson I involves the same claim as Johnson II.

Whether two lawsuits involve the same claim depends on four factors that a court does "not apply mechanistically." Mpoyo, 430 F.3d at 987. A court must consider:

1. whether the two suits arise out of the same transactional nucleus of facts;
2. whether the rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action;
3. whether the two suits involve infringement of the same right; and
4. whether substantially the same evidence is presented in the two actions.

Mpoyo, 430 F.3d at 987. The most important and often dispositive factor is the first, common

ORDER — 6

1  "nucleus," criterion. Id. at 988.

2  The Ninth Circuit applies the Restatement "transaction test" to determine whether two
3  suits arise out of the same transactional nucleus of facts. Whether two events are part of the
4  same transaction or series depends on whether they are related to the same set of facts and
5  whether they could conveniently be tried together. Western Sys., Inc. v. Ulloa, 958 F.2d 864,
6  871 (9th Cir. 1992) (citing Restatement (Second) of Judgments § 24(2) (1982)). Similarly,

7/8/9  > [w]hat factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

10  Rest. 2d. Judgments § 24(2).

11  Defendant argues that both lawsuits arise from the same common nucleus of facts,
12  because all claims are related to Johnson's employment relationship with Boeing and involve
13  application of the CBA, and that the claims in both lawsuits could have been tried together and
14  would have formed a convenient trial unit. (Mot. for Summ. J. at 9-10; Reply at 11.) Relying
15  heavily on the Ninth Circuit's analysis in Sidhu, Plaintiff responds that the lawsuits are
16  distinguishable because Johnson I involved Plaintiff's layoff rights while Johnson II involved her
17  return to work rights, including Boeing's failure to reassign Plaintiff despite medical clearance,
18  which did not occur until after the dismissal of Johnson I. See Sidhu, 279 F.3d at 900.

19  The facts before the court in Sidhu are nearly identical to those in this case. Sidhu
20  involved the application of res judicata in the context of two employment claims between
21  identical parties, arising during a single employment relationship governed by a single CBA. 279
22  F.3d at 898. In 1995, Sidhu sustained an industrial injury and commenced a leave of absence. Id.
23  In 1996, the defendant laid off five employees, including Sidhu. Id. The union grieved Sidhu's
24  layoff and filed a motion to compel arbitration, but the district court dismissed the motion
25  because it was untimely. Id. Two years later, Sidhu presented the defendant with a medical
26  release and asked to return to work. Id. Defendant denied the request. Id. The union filed

ORDER — 7

1 another grievance on Sidhu's behalf, which the defendant also denied. Id.  The union then filed
2 suit under the Labor Management Relations Act. Id.  The district court dismissed the case for
3 failure to exhaust grievance procedures under the CBA. Id.  On appeal, the defendant argued,
4 among other things, that Sidhu's claim was barred by res judicata. Id.

5 In applying the four-factor test, the court reasoned that, under the first factor, the suits
6 did not arise out of the same transaction because the first action was predicated on Sidhu's layoff
7 from work, while the second suit was predicated on the defendant's refusal to return Sidhu to
8 work upon Sidhu's tendering a note from his doctor. 279 F.3d at 900.  In analyzing the second
9 and third factors, the court also distinguished between layoff and return to work rights,
10 concluding that the rights or interests established in the prior judgment would not be destroyed
11 or impaired by prosecution of the second action and that the two suits did not involve
12 infringement of the same right because layoff and return to work rights were governed by
13 different sections of the CBA. Id.  The court also concluded that, because the earlier action was
14 dismissed on timeliness grounds before any evidence was presented, there was no reason to
15 believe that the evidence presented in the two suits would have been the same. Id.

16 The same distinction between layoff and return to work claims identified in Sidhu is
17 present here.  In terms of the first common nucleus factor, the discrimination and retaliation
18 alleged in Johnson I involved conduct occurring up to and including Plaintiff's layoff on August
19 23, 2002, related to the Plaintiff's SHEAR.  In contrast, the discrimination alleged in Johnson II
20 involves conduct occurring after Plaintiff's recall on April 19, 2005, including Defendant's failure
21 to return Plaintiff to work after Plaintiff tendered a doctor's note in August 2006.  Thus, Johnson
22 I and Johnson II allege two distinct transactions — the layoff, and the recall process — that
23 occurred during two different time periods — before August 24, 2002, and after April 19, 2005.
24 Further, under the second and third factors, Plaintiff's layoff and return to work rights are
25 governed by different sections within Article 22 of the CBA governing Workforce
26 Administration.  (See Greene Decl., Ex. G.)  Thus, consistent with Sidhu, Johnson I and Johnson

ORDER — 8

1  II also involve different interests and rights.

2  The fourth factor, whether the evidence presented would have been substantially the
3  same, is inconclusive because Johnson I was voluntarily dismissed before Plaintiff substantively
4  responded to Defendant's summary judgment motion. It is unclear what evidence Plaintiff would
5  have presented in her first case. However, much of the factual dispute in this motion centers on
6  Dr. Firestone's opinion that Plaintiff could return to work without restriction. Dr. Firestone was
7  not consulted until after the dismissal of Johnson I. The Court finds no reason to believe that the
8  evidence presented in the suits will be the same, and concludes that the fourth factor is not met in
9  this case.

10  **B.   Whether Plaintiff's claims in Johnson II are barred because they arose prior to final judgment in Johnson I.**
11

12  Defendant does not attempt to rebut Plaintiff's assertion that Johnson I and Johnson II
13  involve distinguishable rights, but argues that res judicata nonetheless applies because, unlike the
14  claims in Sidhu, the facts underlying the claims in Johnson II all arose before entry of final
15  judgment in Johnson I. See Feminist Women's Health Ctr. v. Codispoti, 63 F.3d 863, 866 (9th
16  Cir. 1995) (concluding that res judicata applied to claims that "were ripe at the time [of] the
17  [prior] judgment"); see also Gregory v. Windall, 153 F.3d 1071, 1074 (9th Cir. 1998).
18  However, none of the cases Defendant cites suggest that the Ninth Circuit has created an
19  additional, separate basis for application of the doctrine where the transactional test is not met.
20  Claims that were ripe at the time of judgment must still involve the same claim or transaction to
21  bar future litigation. See Feminist Women's Health Ctr., 63 F.3d at 868; Gregory, 153 F.3d at
22  1074 (both stating the rule in the context of a full analysis of the four-factor transaction test).

23  Further, the other cases cited by Defendant to support its argument that res judicata bars
24  later employment actions based on facts occurring after the filing of the first complaint but before
25  final judgment are distinguishable. None of those cases involved the termination and return to
26  work rights at issue here, and unlike this case, the complaints at issue in those cases all alleged

27
ORDER — 9

the same basic set of facts as alleged in the prior actions. See Mpoyo, 430 F.3d at 987 (predicate act in both lawsuits was single act of termination of employment); Baker v. Voith Fabrics U.S. Sales, Inc., No. CV-07-003-JLQ, 2007 WL 1549919, at *1 (E.D. Wash. May 24, 2007) (complaint alleged different claims, but based on nearly identical facts as those alleged in prior action); Green v. N. Seattle Cmty. Coll., No. C06-1456JCC, 2007 WL 709308, at *3 (W.D. Wash. Mar. 6, 2007) (same); Lama v. Fred Meyer, Inc., No. C05-385C, 2006 WL 581084, at *3-4 (W.D. Wash. Mar. 8, 2006) (same). None of these cases stand for the proposition advanced by Defendant that a claim in a later action can be precluded by res judicata simply because it arose before the final judgment on an earlier action.

Finally, Defendant argues that the time frame identified in the EEOC complaint operates as an admission that Plaintiff's claims in Johnson II were ripe prior to the dismissal of Johnson I. The time frame identified in the EEOC complaint is not material to this dispute, however, because the Court has already determined that the claims in Johnson I and Johnson II do not arise from a common nucleus of facts.

**Conclusion**

Res judicata does not bar Plaintiff's claims. Although Johnson I and Johnson II involve alleged acts of discrimination between the same parties and during a single employment relationship, the claims nonetheless allege two distinct transactions — the layoff and the recall process — that occurred during two different time periods — before August 24, 2002, and after April 19, 2005. Therefore, Defendant is not entitled to judgment as a matter of law and the motion for summary judgment is DENIED.

The clerk is directed to send copies of this order to all counsel of record.

Dated: May 13, 2008.

                               s/ Marsha J. Pechman
                               Marsha J. Pechman
                               United States District Judge

ORDER — 10